819 So.2d 548 (2002)
Kimberly D. MITCHELL, Appellant,
v.
Olive S. GLIMM, Appellee.
No. 2000-CA-01684-COA.
Court of Appeals of Mississippi.
March 26, 2002.
Rehearing Denied June 18, 2002.
*549 David O. McCormick, Pascagoula, Paul T. Benton, Alfred Herbert Ruemke, III, Biloxi, Michelle L. Ward, Pascagoula, Carol *550 Ladner, Gulfport, attorneys for appellant.
John A. Banahan, Melinda Owen Johnson, attorneys for appellee.
EN BANC.
MYERS, J., for the court.
¶ 1. This case results from a three-car accident in Ocean Springs, Mississippi. Olive S. Glimm struck Kimberly D. Mitchell from behind causing Mitchell's car to strike the car in front of her. Mitchell complained of neck and back pain and was taken to a local emergency room for evaluation. Subsequently, Mitchell developed pain in her hands and arms which she alleged resulted from the accident. Mitchell sought treatment for her ailments and numerous surgeries and procedures resulted in an attempt to alleviate Mitchell's pain. A trial was had with the jury returning a verdict for Mitchell but awarding zero dollars in damages. Mitchell moved for a new trial which the trial court denied. From the denial of that motion, Mitchell appeals raising the following issues:
1. WHETHER THE TRIAL COURT ERRED BY DENYING MITCHELL'S MOTION FOR A NEW TRIAL;
2. WHETHER THE TRIAL COURT ERRED IN LIMITING THE TESTIMONY OF MITCHELL'S EXPERT AND ADMITTING THE TESTIMONY OF GLIMM'S EXPERT;
3. WHETHER THE TRIAL COURT ERRED IN DENYING MITCHELL'S MOTION FOR A MISTRIAL; AND
4. WHETHER THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE OF LIABILITY INSURANCE.

STATEMENT OF FACTS
¶ 2. On July 22, 1994, Kimberly Mitchell was hit from behind by Olive Glimm, causing Mitchell's car to strike the car in front of her. Mitchell complained at the scene of pain in her neck and back and was taken by ambulance to Kessler Air Force Base's hospital where Mitchell was employed as a nurse. Shortly after this accident Mitchell went on a two-week vacation to South Carolina. After returning from her vacation, Mitchell first complained of pain in her arms. Mitchell's condition deteriorated to such an extent that she was placed on sick leave, then later to the patient squadron, and eventually discharged from the United States Air Force due to her medical problems.
¶ 3. It was established at trial that Mitchell eventually sought medical treatment from a pain clinic where she was diagnosed with reflex sympathetic dystrophy, thoracic outlet syndrome and ulnar nerve entrapment. As a result of this diagnosis, Mitchell underwent numerous surgeries and procedures in an attempt to alleviate pain and regain the use of her arms. It was also established from prior medical records that Mitchell suffered from similar symptoms before the accident as she had sought medical treatment prior to the accident complaining of coldness in her arms. The treating physician diagnosed Mitchell as possibly having Raynaud's Syndrome.
¶ 4. Both Mitchell and Glimm each presented several experts who testified concerning the accuracy of the diagnosis and whether the impacts suffered by Mitchell as a result of this accident caused the injuries Mitchell claims she suffered. The trial court did not allow Mitchell's accident reconstructionist to testify to the affect the collisions would have on a human body because the trial court found that the expert did not have the necessary qualifications to testify to that issue. The trial judge allowed Glimm's expert witness to testify to the affect the collisions suffered *551 by Mitchell would have on a human body as the trial court deemed the witness to have the necessary qualifications to testify on those issues.
¶ 5. During the course of the trial, Mitchell sought to introduce evidence of bias and prejudice on the part of Glimm's expert witness. Mitchell sought to introduce evidence that the witness' employer derived twenty-seven percent of its income from conducting research for insurance companies and that Glimm's insurance company constituted a total of ten percent of the total income of the expert's employer. The trial court refused to allow the introduction of that evidence. At the conclusion of the trial, the jury delivered a verdict for Mitchell, but awarded zero dollars in damages. Mitchell then moved for a new trial which the trial court denied. Aggrieved by this decision, Mitchell perfected this appeal.

STANDARD OF REVIEW AND LEGAL ANALYSIS

1. WHETHER THE TRIAL COURT ERRED BY DENYING MITCHELL'S MOTION FOR A NEW TRIAL.
¶ 6. Mitchell first contends that the trial court erred when it denied her motion for a new trial. Motions for new trial challenge the weight of the evidence. Gordon v. McDonald, 743 So.2d 1029, 1033(¶ 25) (Miss.Ct.App.1999). Whether the trial court grants or denies a motion for new trial is a question of the trial judge's discretion. Trustmark Nat'l Bank v. Jeff Anderson Med. Ctr., 792 So.2d 267, 274(¶ 17) (Miss.Ct.App.2000). When evaluating the trial judge's decision to deny a motion for new trial, all evidence is viewed in the light most favorable to the nonmoving party and this Court will only reverse where there is an abuse of discretion by the trial court. Id. Both parties presented several expert witnesses at trial, each stating that Mitchell suffered some injury from the accident. Whether all the injuries suffered by Mitchell were a result of the accident is not a question for this Court to resolve; however, it is undisputed that Mitchell suffered some injury as a result of the accident. Upon viewing the evidence presented at trial in the light most favorable to Glimm, it is clear that Mitchell suffered some damages from this accident. The jury verdict is, therefore, against the overwhelming weight of the evidence and is reversed. We remand this case to the trial court for a new trial only on the issue of damages.

2. WHETHER THE TRIAL COURT ERRED IN LIMITING THE TESTIMONY OF MITCHELL'S EXPERT AND ADMITTING THE TESTIMONY OF GLIMM'S EXPERT.
¶ 7. Mitchell next contends that the trial court erred by limiting the testimony of her expert and admitting the testimony of Glimm's expert. The admission or exclusion of expert testimony is controlled by the trial judge's discretion and this Court will not disturb that decision unless the trial court clearly abused that discretion. Sheffield v. Goodwin, 740 So.2d 854, 856(¶ 6) (Miss.1999). Before a person can testify as an expert, he or she must first be qualified as an expert. Watkins v. U-Haul Int'l, Inc., 770 So.2d 970, 973(¶ 10) (Miss.Ct.App.2000). In order to qualify as an expert, a person "must possess some experience or expertise beyond that of the average, randomly selected adult." Crawford v. State, 754 So.2d 1211, 1215(¶ 7) (Miss.2000). With these standards in mind, we look to the points of error presented in this issue.

A. Mitchell's Expert.
¶ 8. Mitchell presented a licensed engineer to testify to the forces involved in *552 the impact experienced by Mitchell as a result of the accident. The trial court allowed the expert to testify to this. The trial court, however, refused to allow Mitchell's expert to testify to the affect the impact would have on a human body finding that Mitchell's expert had not demonstrated sufficient credentials or experience in the area of biomechanics to render an expert opinion. Based on a careful review of the record of this trial, this Court finds no abuse of discretion by the trial court's refusal to allow Mitchell's expert to testify to the affect the impact of the subject accident would have on a human body.

B. Glimm's Expert.
¶ 9. Mitchell also contends that the expert offered by Glimm was not qualified to testify to the affect the impact of the subject accident would have on a human body. Glimm's expert was tendered and, after extensive voir dire, accepted as an expert in the areas of biomechanics, occupant kinematics, injury causation and family practice. In addition to being a licensed medical doctor, Glimm's expert also holds a degree in engineering science. Glimm's expert testified as to the forces involved in the subject accident and the affect those forces have on a human body. This Court can find no abuse of discretion by the trial court in allowing Glimm's expert to testify to the affect the accident would have on a human body.

C. Demonstrative aides utilized by Glimm's expert.
¶ 10. As a sub-part of this issue, Mitchell also asserts that the trial court erred by allowing Glimm's expert to testify using a demonstrative aide to assist the jury in understanding his testimony. While testifying, Glimm's expert utilized a chart to assist the jury in better understanding his testimony. The chart was a compilation of data from numerous articles relied on by the expert. A list of those articles was presented to Mitchell during the discovery process. The chart was not introduced into evidence during the course of the trial. Mitchell complains that the jury should not have been allowed to see the chart. The chart was used for the purpose of explaining how the expert came to his conclusions on the forces present in the accident. Illustrative exhibits can be used to assist the jury in understanding an issue presented at trial. Seal v. Miller, 605 So.2d 240, 247 (Miss.1992). The chart was utilized by the expert in an effort to assist the jury in understanding his testimony. This is clearly a benefit to the jury and Mitchell had ample opportunity to cross-examine the expert on the accuracy of the chart. This issue is without merit.

3. WHETHER THE TRIAL COURT ERRED IN DENYING MITCHELL'S MOTION FOR A MISTRIAL.
¶ 11. Mitchell next contends that the trial court erred when it denied her motion for a mistrial. The parties in this case agreed before the trial began not to elicit testimony concerning the income of one of Mitchell's experts, Dr. Nelson Hendler. Mitchell did not object to the testimony when it was being elicited. Instead, Mitchell moved for a mistrial the next day of trial. It is well established that in order to preserve an objection, an attorney must make a contemporaneous objection. Gatlin v. State, 724 So.2d 359, 369(¶ 43) (Miss.1998). Failure to make a contemporaneous objection and allow the trial court opportunity to cure the defect is a procedural bar and constitutes a waiver of the argument on appeal. Id.

4. WHETHER THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE OF LIABILITY INSURANCE.
¶ 12. Mitchell's final contention is that she should have been allowed to present *553 evidence of liability insurance in order to prove bias and prejudice on the part of one of Glimm's expert witnesses. The expert is employed by and a minor shareholder in an expert consultation and research company. The company derives approximately twenty-seven percent of its income from insurance companies. The particular insurance company which insured Glimm in this case accounts for approximately ten percent of the income of the same company. Mitchell wished to introduce this evidence at trial in an attempt to show that the witness was biased. The trial court did not allow Mitchell to present this evidence to the jury.
¶ 13. The traditional rule concerning liability insurance is that it is not admissible on the issue of the negligence of a party. M.R.E. 411. The rule does not, however, exclude evidence of liability insurance for purposes of proving the bias or prejudice of a witness. Id. When a party "in good faith, on cross-examination, seeks to elicit the interest, bias, or prejudice of a witness by a proper question, he will not be precluded from doing so simply because the answer may reveal that a liability insurance company is interested." Skelton v. Turnipseed, 235 So.2d 694, 697 (Miss. 1970). It is clear in today's society given the new mandates from our state legislature requiring mandatory insurance that juries in many personal injury cases are aware that insurance companies are involved in the litigation. Otherwise, the jury is to assume that a defendant is breaking the law by not having insurance coverage. We believe that Mitchell offered the evidence of the existence of liability insurance in a good faith attempt to show the bias of Glimm's expert. For this reason, we would also reverse the jury verdict and remand the case for a new trial.

CONCLUSION
¶ 14. We reverse the trial court's decision and remand this case to the circuit court for a new trial on the basis that the verdict was not supported by the evidence presented at trial and that Mitchell should have been given the opportunity to exhibit the bias, if any, of Glimm's expert. The remaining issues presented in this appeal are without merit.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS REVERSED AND REMANDED FOR NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, P.J., THOMAS, LEE, CHANDLER AND BRANTLEY, JJ., CONCUR. McMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J. IRVING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, J.
McMILLIN, C.J., dissenting:
¶ 16. I respectfully dissent. There was a substantial body of evidence presented at trial from which the jury could conclude that none of the injuries for which Mitchell sought compensation had, in fact, been proximately caused by the collision that was the subject of this suit. Even when negligence in causing the accident itself is not in dispute, it is both possible and proper for the jury to reach the conclusion that the plaintiff suffered no compensable injury. Southern CATV Systems, Inc. v. Howard, 237 So.2d 452, 453 (Miss.1970). There was a significant amount of expert testimony developed during the course of this trial regarding the nature of Mitchell's medical difficulties and the likelihood that they could have been caused by trauma associated with this relatively minor vehicular *554 collision. The jury, in such cases, sits as the trier of fact responsible for determining issues of credibility and what weight and worth to assign to the various aspects of the proof submitted. Scott Addison Constr., Inc. v. Lauderdale County Sch. Sys., 789 So.2d 771, 773(¶ 8) (Miss. 2001). Unless this Court becomes convinced from our review of the record that the jury's decision was not based on the evidence but was, instead, based on bias, passion, or prejudice, it is improper for us to intercede. I find nothing in the record of this case that would indicate that the jury did anything other than fulfill its sworn duty to resolve the disputed issues of fact, which necessarily included the issue of whether Mitchell carried her burden to show by a preponderance of the evidence that at least some part of her medical complaints were proximately caused by the accident.
¶ 17. Additionally, I do not find reversible error in the trial court's decision to exclude evidence that one of the defendant's expert witnesses owned a fractional interest in a consulting company that derived a relatively small portion of its revenue by consulting with the insurance carrier that provided liability coverage to Glimm. The trial court enjoys substantial discretion in controlling the flow of evidence during trial. Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc., 716 So.2d 200, 210(¶ 36) (Miss. 1998). The court's decision that, whatever probative value this evidence might have had, it was outweighed by the prejudice that would have arisen by interjection of the existence of insurance coverage into the trial was one, in my view, within the range of discretion afforded the trial court. While it may be true, as the majority suggests, that today's average juror is sophisticated enough to suspect the existence of liability insurance, that does nothing to change the fact that, as to the issues presented to the jury for consideration, the question of insurance has no relevance. In that situation, I would conclude that the trial court's ruling to exclude this rather limited financial connection between the expert and the defendant's insurance carrier as tending to show bias of the witness was a reasonable application of Mississippi Rule of Evidence 403, which permits the trial court to exclude evidence that has some relevance "if its probative value is substantially outweighed by the danger of unfair prejudice [or] confusion of the issues...." M.R.E. 403.
¶ 18. I would affirm the jury verdict and resulting judgment.
SOUTHWICK, P.J., JOINS THIS SEPARATE WRITTEN OPINION.
IRVING, J., concurring in part, dissenting in part:
¶ 19. I agree with the majority's holding that this case should be reversed and remanded for a new trial because Mitchell was not allowed to present evidence to the jury of the financial connection of Glimm's expert to Glimm's liability insurance carrier. However, I disagree with the majority's conclusion that the case should be reversed because the verdict is against the overwhelming weight of the evidence. Rather, I agree with the dissent, authored by Chief Judge McMillin, that the jury heard sufficient conflicting evidence upon which it could conclude that Mitchell did not suffer, in the accident in question, any of the injuries complained of. I agree with the remaining portions of the majority opinion.
BRIDGES, J., JOINS THIS SEPARATE OPINION.